**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER VOTTO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ALEXION PHARMACEUTICALS,INC.,<br>DAVID R. BRENNAN, CHRISTOPHER J.<br>COUGHLIN, DEBROAH DUNSIRE, PAUL<br>A. FRIEDMAN, LUDWIG N. HANTSON,<br>JOHN T. MOLLEN, FRANCOIS NADER,<br>JUDITH A. REINSDORF, and ANDREAS<br>RUMMELT,<br><br>　　　　　Defendants. | Case No.:<br><br><br>JURY TRIAL DEMANDED<br><br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges

upon personal knowledge with respect to himself, and upon information and belief based upon,

*inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.　　　This action concerns a proposed transaction ("Proposed Transaction")

announced on December 12, 2020, pursuant to which Alexion Pharmaceuticals, Inc. ("Alexion"

or the "Company") will merge with AstraZeneca PLC ("AstraZeneca").

2.　　　On　December 12, 2020, Alexion Pharmaceutical's Board of Directors (the

"Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of

merger and reorganization (the "Merger Agreement").　Pursuant to the terms of the Merger

Agreement, each share of Alexion common stock will be converted into approximately 2.1243

AstraZeneca American Depositary Shares and $60 in cash (the "Merger Consideration").

3.　　　On February 19, 2021, in order to convince Alexion's shareholders to vote in

favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary F-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4.       The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.       In addition, a special meeting of Alexion stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Alexion stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.       This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.       This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs

complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, an Alexion shareholder.

10.     Defendant Alexion is a Delaware corporation and a party to the Merger Agreement.  Alexion shares are traded on the NASDAQ under the ticker symbol "ALXN."

11.     Defendant David R. Brennan is Chairman of the Board of the Company.

12.     Defendant  Christopher J. Coughlin is a director of the Company.

13.     Defendant Deborah Dunsire is a director of the Company.

14.     Defendant Paul A. Friedman is a director of the Company.

15.     Defendant Ludwig N. Hantson is a Chief Executive Officer and a director of the Company.

16.     Defendant John T. Mollen is a director of the Company.

17.     Defendant Francois Nader is a director of the Company.

18.     Defendant Judith A. Reinsdorf is a director of the Company.

19.     Defendant Andreas Rummelt is a director of the Company.

## FACTS

20.     Alexion is a global biopharmaceutical company focused on serving patients and families affected by rare diseases and devastating conditions through the discovery, development and commercialization of life-changing medicines.  Alexion has developed and commercializes

two approved complement inhibitors to treat patients with paroxysmal nocturnal hemoglobinuria (PNH) and atypical hemolytic uremic syndrome (aHUS), as well as the first and only approved complement inhibitor to treat anti-acetylcholine receptor (AChR) antibody-positive generalized myasthenia gravis (gMG) and neuromyelitis optica spectrum disorder (NMOSD) in patients who are anti-aquaporin-4 (AQP4) antibody positive.

20 . AstraZeneca is a global, science-led biopharmaceutical company that focuses on the discovery, development and commercialization of prescription medicines, primarily for the treatment of diseases in three therapy areas—Oncology, Cardiovascular, Renal & Metabolism, and Respiratory & Immunology. Based in Cambridge, UK, AstraZeneca operates in over 100 countries and its innovative medicines are used by millions of patients worldwide.

21. On December 12, 2020, Alexion's Board caused the Company to enter into the Merger Agreement.

22. The Merger Agreement provides that Delta Omega Sub Holdings Inc. 1 ("Merger Sub I"), a Delaware corporation and a direct, wholly owned Subsidiary of Delta Omega Sub Holdings Inc., a Delaware corporation and a wholly owned Subsidiary of AstraZeneca ("Bidco") will merge with and into Alexion with Alexion surviving, and (2) immediately thereafter, Alexion will merge with and into Delta Omega Sub Holdings LLC 2 ("Merger Sub II"), a Delaware limited liability company and a direct, wholly owned Subsidiary of Bidco, with Merger Sub II surviving as a wholly owned direct subsidiary of Bidco

23. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> other than (i) shares of Company Common Stock to be cancelled or converted pursuant to Section 2.03(b) and (ii) Dissenting Shares (such shares together with the shares of Company Common Stock to be cancelled or converted pursuant to Section 2.03(b), collectively, the "Excluded Shares"), each share of Company

Common Stock outstanding immediately prior to the First Effective Time shall be converted into, and shall thereafter represent only, the right to receive, (A) 2.1243 (the "Exchange Ratio") Parent ADSs (the "Share Consideration"), subject to Section 2.09 with respect to fractional Parent ADSs, and (B) $60.00 in cash without interest (the "Cash Consideration" and, together with the Share Consideration, the "Merger Consideration") and, immediately following such conversion, shall be automatically cancelled and cease to exist (the "Cancellation")

24.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

25.     It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

26.     Section 6.02 of the Merger Agreement has a "no solicitation" clause that prevents Alexion from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

Section 6.02     No Solicitation by Company.

From the date of this Agreement until the earlier of the First Effective Time and the termination of this Agreement, except as otherwise set forth in this Section 6.02, the Company shall not, and shall cause its Subsidiaries and its and its Subsidiaries' respective directors and officers to not, and shall use its reasonable best efforts to cause its and its Subsidiaries' other respective Representatives to not, directly or indirectly, (i) solicit, initiate, knowingly facilitate or knowingly encourage (including by way of furnishing information) any inquiries regarding, or the making or submission of any Company Acquisition Proposal, (ii) (A) enter into or participate in any discussions or negotiations regarding, (B) furnish to any Third Party any information, or (C) otherwise assist, participate in, knowingly facilitate or knowingly encourage any Third Party, in each case, in connection with or for the purpose of knowingly encouraging or facilitating, a Company Acquisition Proposal, (iii) approve, recommend or enter into, or publicly or formally propose to approve, recommend or enter into, any letter of intent or similar document, agreement, commitment, or agreement in principle (whether written or oral, binding or nonbinding) with respect to a Company Acquisition Proposal, (iv) (A) withdraw or qualify, amend or modify in any manner adverse to Parent the Company Board Recommendation, (B) fail to include the Company Board Recommendation in the Proxy Statement/Prospectus or (C) recommend, adopt or

approve or publicly propose to recommend, adopt or approve any Company Acquisition Proposal (any of the foregoing in this clause (iv), a "Company Adverse Recommendation Change") or (v) take any action to make any "moratorium", "control share acquisition", "fair price", "supermajority", "affiliate transactions" or "business combination statute or regulation" or other similar anti-takeover laws and regulations of the State of Delaware, including Section 203 of the DGCL, inapplicable to any Third Party or any Company Acquisition Proposal.

27.     In addition, Section 10.3 of the Merger Agreement requires Alexion to pay up to a $1,180,000,000 "termination fee" in the event this agreement is terminated by Alexion and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to Alexion's ability to consider other offers.

28.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

29.     As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

30.     First, the Registration Statement omits material information regarding Alexion's and AstraZeneca's financial projections.

31.     With respect to Alexion's financial projections, the Registration Statement fails to disclose all line items used to calculate Non-GAAP Operating Income (Post-SBC), Tax-Effected EBIT, Unlevered Free Cash Flow, Non-GAAP EPS (Pre-SBC), Gross Profit, Operating Profit, and Non-GAAP Net Income.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

32.     With respect to AstraZeneca's financial projections, the Registration Statement fails to disclose all line items used to calculate Core EBIT, Unlevered Free Cash Flow, and Core EPS.  The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP

metrics.

33.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

34.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisors BofA Securities, Inc. ("BofA") in connection with the Proposed Transaction.

35.     With respect to BofA's *Selected Publicly Traded Companies Analysis for Alexion*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.  This information must be disclosed to make the Registration Statement not materially misleading to Alexion stockholders and provide stockholders with full and relevant information in considering how to vote.

36.     With respect to BofA's *Selected Precedent Transactions Analysis for Alexion*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.  This information must be disclosed to make the Registration Statement not materially misleading to Alexion stockholders and provide stockholders with full and relevant information in considering how to vote.

37.     With respect to *BofA's Discounted Cash Flow Analysis for Alexion*, the Registration Statement fails to include: (i) Alexion management's basis to direct that the analysis assume no cash flows or terminal value for Alexion beyond 2040, (ii) the individual inputs and assumptions underlying the discount rates ranging from 7.0% to 9.5%; (iii) Alexion's weighted

average cost of capital, (iv) Alexion's net debt as of September 30, 2020, and (v) the number of

fully-diluted shares of Alexion common stock outstanding.  This information must be disclosed to

make the Registration Statement not materially misleading to Alexion stockholders and provide

stockholders with full and relevant information in considering how to vote.

38.      With respect to BofA's *Selected Publicly Traded Companies Analysis for*

*AstraZeneca*, the Registration Statement fails to disclose the individual multiples and metrics for

the companies observed in the analysis.  This information must be disclosed to make the

Registration Statement not materially misleading to Alexion stockholders and provide

stockholders with full and relevant information in considering how to vote.

39.      With respect to BofA's *Discounted Cash Flow Analysis for AstraZeneca*, the

Registration Statement fails to include: (i) the calculated terminal values for AstraZeneca, (ii)

BofA's full basis for applying perpetual growth rates ranging from negative 3.0% to positive 1.0%

to the terminal year cash flows, (iii) the individual inputs and assumptions underlying the discount

rates ranging from 6.0% to 7.5%, (iv)AstraZeneca's weighted average cost of capital, and (v) the

number of fully-diluted AstraZeneca ordinary shares outstanding.  This information must be

disclosed to make the Registration Statement not materially misleading to Alexion stockholders

and provide stockholders with full and relevant information in considering how to vote.

40.      The omission of the above-referenced material information renders the

Registration Statement false and misleading.

41.      The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose

such information to stockholders as required.

46.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement.  Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

47.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF
SECTION 20(a) OF THE EXCHANGE ACT)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.      Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 10, 2021

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor

New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*